**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**WILLIAM NOVAK,**

                                        **Plaintiff**

                    **v.**                                    **5:05-CV-199**
                                                             **(FJS/GJD)**

**BOARD OF EDUCATION OF THE**
**FAYETTEVILLE-MANLIUS CENTRAL**
**SCHOOL DISTRICT; FAYETTEVILLE-**
**MANLIUS CENTRAL SCHOOL DISTRICT;**
**and JUDITH CLARKE, in her capacity as**
**Director of Transportation,**

                              **Defendants.**

_____

**APPEARANCES**                          **OF COUNSEL**

**MELVIN & MELVIN, PLLC**                **FRANK J. VAVONESE, ESQ.**
217 South Salina Street                  **ELIZABETH A. GENUNG, ESQ.**
7th Floor                                **ROGER W. BRADLEY, ESQ.**
Syracuse, New York 13202
Attorneys for Plaintiff

**OFFICE OF FRANK W. MILLER**            **CHARLES E. SYMONS, ESQ.**
6575 Kirkville Road                      **FRANK W. MILLER, ESQ.**
East Syracuse, New York 13057
Attorneys for Defendants

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On February 14, 2005, Plaintiff filed his Complaint asserting eleven causes of action

arising out of his five-day suspension without pay from his job as a school bus driver in the

Fayetteville-Manlius Central School District.  On January 15, 2007, Defendants filed their

motion for summary judgment on all of Plaintiff's claims.  In response, Plaintiff withdrew six causes of action, so that his remaining claims are for (1) violation of the First Amendment; (2) violation of Article I, § 8 of the New York Constitution; (3) violation of 42 U.S.C. § 1983; (4) deprivation of liberty and property interests without due process; and (5) an injunction.  Plaintiff also filed a cross-motion for summary judgment on his remaining claims.

Currently before the Court are Defendants' motion and Plaintiff's cross-motion for summary judgment on Plaintiff's remaining claims.  On March 9, 2007, the Court heard oral argument in support of, and in opposition to, these motions.  At that time, the Court granted in part Defendants' motion and denied in part Plaintiff's cross-motion for summary judgment dismissing Defendant Judith Clarke from this action, as well as dismissing Plaintiff's procedural and substantive due process claims.  The Court reserved decision on all other aspects of the motions.  The following constitutes the Court's written decision.

## II. BACKGROUND[1]

Defendant Fayetteville-Manlius Central School District ("District") has employed Plaintiff as a bus driver since 1994, and Defendant Clarke acted as his supervisor.  Prior to 2005, the Fayetteville-Manlius Transportation Association ("Association") represented the District's bus drivers; and, subsequently, a local affiliate of the Service Employees International Union ("SEIU") has represented them.

The collective bargaining agreement ("CBA"), operative during the relevant periods,

---

[1] Unless noted, the facts are not in dispute.

includes a three-step grievance procedure and a provision allowing the Transportation

Supervisor to impose minor discipline.  The essential grievance procedure follows:

Step 1:     (a)     Grievant addresses the grievance with his immediate supervisor.

                   (b)     Within two days of this conference, Grievant may elect to address the grievance orally with a designated representative of the Director of Business Services.  Grievant may request that an Association representative be present.

Step 2:     Grievant may file a written grievance with the Director of Business Services who shall give a written answer within three days.

Step 3:     Grievant, through the Association only, may appeal to the Superintendent of Schools or his designated representative who shall discuss the matter with the Association's grievance committee within ten school days.  The Superintendent or his representative shall give a written decision within five school days after this discussion.

             The Association may further appeal within five school days of the decision, and the parties shall appoint an impartial Arbitrator and submit the grievance for his binding decision.

*See* Affidavit of Mary Ellen Vaillancourt ("Vaillancourt Aff."), sworn to Oct. 19, 2006, at Exhibit "1," at 16-17.

Furthermore, concerning discipline, the CBA waived the procedures set forth in N.Y.

Civ. Serv. Law § 75, allowing the Transportation Supervisor to impose discipline up to and

including five unpaid days suspension for minor violations of departmental rules and regulations.

*See id.* at Exhibit "1," at 3.

-3-

Beginning in 2000, Plaintiff was involved in efforts to affiliate the local driver's union with a larger union.  On May 6, 2003, Plaintiff testified before the Public Employment Relations Board ("PERB") in connection with an improper labor practice charge that co-worker Richard Griffith filed against the District.  Thereafter, Plaintiff asked Defendant Clarke whether she would consider his absence from work on the day of the hearing a paid sick day or a paid personal day.  Defendant Clarke answered that she would consider it to be a paid personal day.[2] The next day, Plaintiff filed a grievance; but the Association declined to pursue the grievance to arbitration.

During Plaintiff's union-organizing efforts, he repeatedly told co-workers a story, which has been labeled "the sheep allegory."  Plaintiff's version of the allegory follows:

> [W]e were like a bunch of sheep and [sic] that what we did was [sit] around in a group all nervously waiting for the wolf to show up.  And sure as shooting here sooner or later, here comes the wolf and the wolf would come down and say, I feel like some mutton tonight and he'd come down and he'd take one away and the rest would all close ranks and all mutter, glad it wasn't me, glad it wasn't me.  And I said what we should do . . . is when the wolf shows up, we should all turn and say, come on down wolfy, we'll kick your ass, combine together as a group.

*See* Declaration of Frank J. Vavonese, Esq. ("Vavonese Decl."), sworn to Feb. 20, 2007, at Exhibit "E," at 10-11.

Co-workers reported versions of the story to Defendant Clarke, and she reported the matter to the District's administration on approximately October 30, 2003.

Defendants conducted an investigation and hired a professional investigation service

---

[2] Plaintiff asserts that he took a painkiller in the morning before the PERB hearing and was unable to drive.

-4-

called AMRIC Associates Ltd. ("AMRIC") on November 13, 2003.  In their reports to Defendant Clarke and in interviews during the AMRIC investigation, two drivers indicated that Plaintiff told a different version of the story involving the group of sheep killing the wolf or killing "Judy" (referring to Defendant Judith Clarke).  The District also interviewed Plaintiff, with his attorney present, on December 1, 2003.  At that time, Plaintiff's counsel answered all questions on his behalf.  Therefore, the District interviewed Plaintiff again on December 9, 2003, when Plaintiff admitted telling the sheep allegory but denied ever using the word "kill."  On January 9, 2004, AMRIC issued the report of its investigation, which stated that it was unlikely that Plaintiff posed a threat at that time.  *See generally* Vavonese Decl. at Exhibit "J."

On February 13, 2004, the District suspended Plaintiff for five days without pay, and Defendant Clarke communicated the decision to Plaintiff in a letter.  The letter stated that Plaintiff was suspended for "[d]iscourteous treatment of the public or any other conduct which does not merit the public trust or is inappropriate behavior as a representative of the District" and "[f]alsification or omission or pertinent information of District forms or records including daily work sheets and attendance records, willful misrepresentation of facts, forging another's signature, etc."  In addition, the District stated that it found Plaintiff had engaged in "unprofessional conduct or language."  In support of its decision, the District essentially stated that Plaintiff lied by denying he used the word "kill" in the sheep allegory and by denying that he made a "sheep 'bleating'" sound at Defendant Clarke on a prior occasion.  *See* Vavonese Decl. at Exhibit "K."  Pursuant to the CBA's grievance procedure, Plaintiff grieved the suspension. However, the Association declined to pursue the grievance beyond the first two steps.  Plaintiff also filed an improper labor practice charge with PERB but subsequently withdrew that

complaint.[3]


# III. DISCUSSION

## A.    Plaintiff's claims against Defendant Clarke in her official capacity

As an initial matter, Defendants move to dismiss Defendant Clarke from this action and strike her name from the caption because Plaintiff's claims against her in her official capacity are redundant of his claims against the government Defendants.[4]

Claims against officers of local government entities in their official capacities are really claims against the entity itself. *See Wallikas v. Harder*, 67 F. Supp. 2d 82, 83 (N.D.N.Y. 1999) (citations omitted). When the entity can be sued and has been named as a defendant, claims against the officers in their official capacities are redundant. *See id.*

Accordingly, as stated at oral argument, the Court grants Defendants' motion and denies Plaintiff's cross-motion for summary judgment on Plaintiff's claims against Defendant Clarke in her official capacity and, therefore, dismisses Defendant Clarke from this action.[5]


## B.    First Amendment retaliation claim

---

[3] Throughout his submissions, Plaintiff asserts that the District dominated the Association. Therefore, he contends that the Association improperly failed to prosecute his grievances and convinced him to withdraw his PERB complaint.

[4] Plaintiff does not respond to Defendants' argument for summary judgment on this issue.

[5] Defendants also request that the Court strike Defendant Clarke's name from the caption. However, they offer no reason to do so, and the Court can find none. Accordingly, the Court denies this request.

Plaintiff claims that his five-day unpaid suspension constitutes unlawful retaliation in violation of his First Amendment rights.  Specifically, he claims that the District suspended him because of his speech relating to the bus drivers' need to organize a stronger union including his May 2003 PERB testimony and the sheep allegory.

Government employers require a substantial amount of control over employees' speech and actions, but public employees do not surrender all First Amendment rights.  *See Garcetti v. Ceballos*, 126 S. Ct. 1951, 1957, 1958 (2006) (citations omitted).  Therefore, when public employees engage in protected speech about matters of public concern, the government can only impose speech restrictions necessary for efficient operations.  *See id.* at 1958 (citation omitted).

A public employee asserting a First Amendment retaliation claim must initially establish a *prima facie* case that (1) his speech was protected as a matter of law; (2) he suffered an adverse employment action; and (3) a causal connection exists between his speech and the retaliation, so that the speech was a motivating factor for the retaliation.[6]  *See Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) (citation omitted).  If the plaintiff establishes a *prima facie* case, the defendant can defeat his claim by proving "by a preponderance of the evidence that it would have taken the same adverse action regardless of the protected speech . . . ."  *Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2004) (citation omitted).  Otherwise, the court engages in *Pickering* balancing of the interests of the employee in commenting on matters of public concern against the interests of the employer in promoting efficient public services.  *See id.* (citation omitted).

---

[6] The parties have not addressed the second element – whether suspension is a qualifying adverse employment action.  However, in this Circuit, the institution of disciplinary proceedings constitutes an adverse employment action.  *See Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006) (citation omitted).  Therefore, the Court will not address this element.

### 1.  Protected Speech

Defendants assert that Plaintiff's speech was unprotected because the sheep allegory was a threat and Plaintiff's other speech related to internal workplace grievances rather than matters of public concern.  In response, Plaintiff contends that the sheep allegory was not a threat and that his speech related to union-organizing and governmental misconduct and inefficiency.

### a.  Threatening speech

Threats of violence are not protected speech.  *See Wisniewski v. Bd. of Educ.*, No. 5:02-CV-1403, 2006 WL 1741023, *5 (N.D.N.Y. June 20, 2006) (citation omitted).  An unprotected threat exists when "'the threat on its face and in the circumstances in which it is made is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution[.]'"  *Id.* (quoting *United States v. Malik*, 16 F.3d 45, 51 (2d Cir. 1994) (other citation omitted)).  In evaluating whether a statement is constitutionally-protected hyperbole or an unprotected true threat, the court employs an objective test of whether a reasonable recipient, familiar with the context of the statement, would interpret it as a threat of injury.  *See id.* (quotation and other citation omitted).  Proof of the alleged threat's effect upon the recipient is highly relevant.  *See id.* (quotation omitted).  Moreover, the fact that the speaker lacked either the intent or the ability to carry out the threat does not preclude finding that a true threat existed.  *See id.*  (citations omitted).  However, speech that references violence does not necessarily threaten violence.  *See Johnson v. Ganim*, 342 F.3d 105, 113 (2d Cir. 2003).

-8-

In this case, the alleged threat was at the end of the sheep allegory, when Plaintiff stated that the organized sheep should either kick the wolf/Judy's ass or kill the wolf/Judy.  Either version at least references violence, and the version that references "Judy" identifies a potential target.  The context of this statement was Plaintiff's efforts to organize his co-workers to form a stronger union and his allegations that the District dominated the Association to the workers' detriment.  In addition, Defendants allege that Plaintiff bleated like a sheep at Defendant Clarke in April 2003.  In terms of Defendants' reaction to the sheep allegory, Defendant Clarke first received reports on approximately October 30, 2003.  Thereafter, Defendants assert that she reported the allegory to her superiors who ultimately passed the story to the Superintendent.  The District did not contact the police but hired a professional investigator on November 13, 2003, to assess the threat.  Moreover, the District did not interview Plaintiff until December 1, 2003, and it did not notify him of the suspension until February 13, 2004.  The District's reaction to this alleged threat was less than immediate.

Considering the content and context of the sheep allegory, as well as Defendants' reaction upon hearing it, the Court finds that genuine issues of material fact exist concerning whether the sheep allegory was protected speech or an unprotected threat.

### b. Union-organizing or workplace grievance

The First Amendment does not allow public employees to "'constitutionalize the employee grievance.'"  *See Garcetti*, 126 S. Ct. at 1959 (quotation omitted).  However, the Second Circuit has held that intra-union disputes can raise matters of public concern.  *See Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999).  For example, when there is a totally dominated

"company union," the activities of a minority faction might be the only genuine union activity, and the minority faction's speech is protected.  *See id.*  Additionally, a grey area occurs when union leaders are "'in bed'" with management, and a faction makes critical statements and attempts to change leadership.  *See id.*  In the latter situation, the Second Circuit held that "activities on behalf of a union faction that necessarily entail a substantial criticism of management raise matters of public concern . . . ."  *Id.* (finding that the faction had strongly criticized management so that the dispute did not involve solely intra-union affairs, and management was aware of the criticism).  Although *Clue* involved some intra-union affairs, it also involved a struggle over the employer's labor policies and the role the union would play in changing them.  *See id.*

Plaintiff alleges that the District dominated the Association, that his PERB testimony concerned an improper labor practice charge against the District, and that the sheep allegory was an attempt to organize workers and to replace the Association with a body that was devoted to the workers rather than to the District.  Defendants contend that Defendant Clarke was not aware of Plaintiff's union-organizing activities prior to the sheep allegory investigation and that she was not aware that the sheep story concerned union organizing.

Since these factual allegations are widely divergent, the Court finds that genuine issues of material fact exist concerning whether Plaintiff engaged in protected union-organizing speech or merely spoke about internal workplace grievances.

### 2. Causation

Defendants argue that there is no evidence of the District's retaliatory motive sufficient to carry Plaintiff's burden of proving causation.  In response, Plaintiff asserts that circumstantial evidence connects his speech and the District's discipline.

A plaintiff must establish a causal connection between the protected speech and the adverse employment action by a preponderance of the evidence.  *See Morris*, 193 F.3d at 110 (citation omitted).  A plaintiff need only prove that the protected speech was a motivating factor behind the adverse action, which can be accomplished indirectly through circumstantial evidence that the protected speech was followed by adverse treatment.  *See id.* (citation omitted). However, a plaintiff must produce "some tangible proof to demonstrate that [his] version of what occurred was not imaginary."  *Id.* at 111.  However, summary judgment is precluded where questions about the employer's motive predominate.  *See id.* at 110 (citation omitted).

Although Defendants indicated at oral argument that they suspended Plaintiff solely because he lied during the course of their investigation into the sheep allegory, Plaintiff has provided some direct and circumstantial evidence that the protected speech might have been a motivating factor in his suspension.  The suspension letter is direct evidence:

> The District has completed its investigation into your involvement with regard to the "Sheep Story" and the affect [sic] it has had on the overall operation of the Department and your immediate supervisor, Mrs. Clarke. . . . Although the District does not believe your statements were such as to warrant initiation [of] any type of criminal or civil action against you at this time, your conduct and statements towards your fellow employees and your supervisor are completely unacceptable from a labor relations point of view.

*See* Vavonese Decl. at Exhibit "K."

The proximity in time between the speech and the suspension is circumstantial evidence that the

speech might have been a motivating factor in his suspension.

Therefore, the Court finds that Plaintiff has produced some tangible proof that his retaliation claim was not imaginary, such that questions about Defendants' motives predominate and preclude summary judgment on this issue.

### 3. *Non-retaliatory reasons for the suspension*

An employer can avoid liability on a First Amendment retaliation claim if it proves by a preponderance of the evidence that it would have taken the adverse employment action regardless of the protected speech. *See Cobb*, 363 F.3d at 102 (citation omitted).

Defendants contend that they had legitimate non-retaliatory reasons for the suspension. They assert that Plaintiff feigned an illness to request a sick day following his testimony at the May 2003 PERB hearing. Defendants also allege that Plaintiff was involved in a confrontation with co-workers Debra Maines and Mary Kay Schuck in the District's parking lot on October 28, 2004, which resulted in verbal and written disciplinary counseling. In addition, Defendants state that they received complaints concerning Plaintiff's conduct, including complaints from a parent named Mrs. Weaver and the track coach. However, the parking lot incident, Weaver complaint, and coach complaint all occurred after the District suspended Plaintiff, and Plaintiff disputes either the occurrence or the nature of the other acts that Defendants cite. Moreover, the suspension letter cites only Plaintiff's lying during the investigation, his "bleating" at Defendant Clarke, and a written reprimand from May 2003.[7] Therefore, the Court finds that there are

---

[7] Moreover, as noted above, Defendants' counsel conceded at oral argument that, at least
(continued...)

genuine disputes of material fact concerning Defendants' non-retaliatory reasons for suspending Plaintiff.

### 4.  *Pickering balancing*

*Pickering* balancing requires courts to balance the interest of an employee in commenting upon matters of public concern and the interest of the government employer in promoting efficient public services.  *See Morris*, 196 F.3d at 109-10 (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968)).

In this case, Defendants claim two disruptive effects of Plaintiff's speech:  co-workers were concerned, and Defendant Clarke feared for her physical safety.  However, at this time, Defendants have presented no evidence that co-workers either feared for their safety or suffered a loss in productivity.  In addition, the Court has already determined that genuine issues of material fact exist as to whether Plaintiff's speech was a threat.  Therefore, the Court cannot determine at this time whether *Pickering* balancing would preclude Plaintiff's First Amendment claim.

Accordingly, for the above-stated reasons, the Court denies both Defendants' motion and Plaintiff's cross-motion for summary judgment on Plaintiff's First Amendment retaliation claim.[8]

---

[7](...continued)
for the purposes of this motion, the suspension was based solely on Plaintiff's lying.

[8] Plaintiff also argues that Defendants' retaliation violates Article I, § 8 of the New York Constitution.  That provision contains free speech protections that are analogous to those in the federal constitution, and the same legal standards apply.  *See Housing Works, Inc. v. Turner*, 179 F. Supp. 2d 177, 199 n.25 (S.D.N.Y. 2001) (citations omitted).  Accordingly, the Court reaches

(continued...)

-13-

**C.      Procedural due process claims**

In procedural due process cases involving both liberty and property interests, courts

employ the three-part test in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See Segal v. City of*

*N.Y.*, 459 F.3d 207, 214-15 (2d Cir. 2006) (citations omitted); *O'Connor v. Pierson*, 426 F.3d

187, 197 (2d Cir. 2005) (citations omitted).  The three-part test considers (1) the nature of the

private interest involved; (2) the government's interest, including the fiscal and administrative

burdens that alternative procedures would entail; and (3) the risk of error with the procedures

actually used, as well as the probable value of additional procedures.[9]  *See Segal*, 459 F.3d at 215

(quoting [*Mathews*, 424 U.S.] at 335).

In this case, several pre-deprivation procedures were either used or available for Plaintiff

to clear his name.  First, the District informed Plaintiff that it was investigating the sheep

allegory.  Second, the District used a professional investigation service, which conducted a

---

[8](...continued)
the same result with regard to this claim.

[9] The Second Circuit has determined that different procedures are required depending on
the type of employment, the circumstances surrounding the employee's alleged misconduct, and
the level of state-actor involved.  *See, e.g.*, *Segal*, 459 F.3d at 215 (citations omitted) (stating
that, although a tenured employee must have a pre-deprivation hearing, an at-will employee must
have only an adequate, reasonably prompt, post-deprivation name-clearing hearing); *Velez v.
Levy*, 401 F.3d 75, 91-92 (2d Cir. 2005) (quotations and other citation omitted) (holding that pre-
removal procedures are required when high-ranking government officials are involved, but in
situations where the state is unable to prevent a sudden or random deprivation, post-deprivation
remedies may suffice); *O'Connor*, 426 F.3d at 198 (citations omitted) (stating that, when post-
deprivation remedies are required, courts routinely find collective bargaining agreement
grievance procedures sufficient); *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 212 (2d Cir.
2002) (quotations and other citation omitted) (holding that an employee with a property interest
is entitled to notice of the charges, an explanation of the employer's evidence, and an
opportunity to present his side of the story prior to the contemplated deprivation, but also
holding that notice and a limited opportunity to be heard pre-deprivation will suffice when a full
adversarial hearing is available post-deprivation).

lengthy investigation, interviewed several of Plaintiff's co-workers, and issued a report.  Third, Plaintiff had two opportunities to clear his name with his attorney present on December 1, 2003, and December 9, 2003.  Fourth, the CBA provided a multi-step grievance procedure by which Plaintiff could challenge the District's actions.  Notably, these procedures were provided even though the CBA waived the employee's right to a hearing pursuant to N.Y. Civ. Serv. Law § 75.  This waiver allowed the Transportation Supervisor to impose discipline up to five days unpaid suspension without a § 75 hearing.  Plaintiff does not specify any deficiency in these procedures, other than alleging that the Association failed to properly represent him by refusing to prosecute his grievance beyond the first two steps.

In addition, several post-deprivation procedures were either used or available for Plaintiff to clear his name.  First, the CBA had a three-step grievance procedure, and Plaintiff filed a grievance.  This grievance proceeded through the first two steps before the Association declined to proceed to the third step.  Second, New York State law provides PERB complaint procedures for improper labor practice charges.  Although Plaintiff asserts that he filed an improper labor practice charge with PERB, he subsequently withdrew that complaint.  Third, state-law Article 78 procedures were available, but Plaintiff did not take advantage of this option.[10]

The Court reaches the following conclusions concerning the *Mathews* factors.  First, assuming that Plaintiff has a protected liberty interest, that interest can be defined as his interest in his reputation and his ability to maintain uninterrupted employment.  *See Segal*, 459 F.3d at 215 (quotation omitted).  Similarly, his property interest is to maintain his employment, which

---

[10] Defendants also contend that Plaintiff could have appealed to the Superintendent, the Board of Education, or the New York State Commissioner of Education.

-15-

was disrupted for five days.  The effect of the suspension on Plaintiff's interests is less than that seen in the numerous cases involving terminated employees.  Second, Defendants' interest is to execute and explain personnel decisions quickly, to maintain a disciplined work force, and to have an efficient workplace.  *See id.*  Third, the risk of error is that false charges will go unrefuted, causing stigma to Plaintiff's name.  *See id.* (citation omitted).  However, this risk has been greatly mitigated due to the pre-suspension and post-suspension procedures actually used (notice of charges before professional investigation, two opportunities to respond to charges with attorney present, three-step grievance procedure, and withdrawn PERB charge) and those available procedures which Plaintiff ignored (full PERB hearing, and Article 78 proceeding).  Seemingly the only procedure not available to Plaintiff was a full trial-like hearing, but such a procedure would have added few additional safeguards and would have posed an unnecessary burden for an employer to impose this level of punishment for employee misconduct.  Therefore, the Court finds that adequate pre- and post-deprivation procedures were available.

Accordingly, the Court grants Defendants' motion and denies Plaintiff's cross-motion for summary judgment on Plaintiff's procedural due process claims.

**D.     Substantive due process**

A plaintiff bringing a substantive due process claim must allege government conduct that "'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  *See Velez*, 401 F.3d at 93 (quotation and other citation omitted).  Additionally, when a more specific constitutional provision prohibits government action, a plaintiff cannot rely on the more generalized notion of substantive due process.  *See id.* at 94 (citation omitted).

Therefore, when the allegedly shocking conduct is the defendant's intent to violate the plaintiff's First Amendment rights or its motive to take away the plaintiff's liberty without procedural due process, the more particularized allegations subsume the substantive due process claim.  *See id.*

Here, Plaintiff asserts that Defendants violated his procedural due process and First Amendment rights by retaliating against him for his speech.  Since the allegedly shocking government conduct concerns these specific constitutional guarantees, Plaintiff cannot rely on the more generalized notion of substantive due process.  *See id.*  Accordingly, the Court grants Defendants' motion and denies Plaintiff's cross-motion for summary judgment on Plaintiff's substantive due process claim.


**E.      Section 1983 claim**

In addition to his First Amendment and due process claims, Plaintiff attempts to assert a cause of action for violation of 42 U.S.C. § 1983.[11]  However, § 1983 is not a source of substantive rights but merely provides a means for vindicating federal statutory or constitutional rights conferred elsewhere.  *See Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (quotation omitted).  Although Plaintiff references violations of the First Amendment in this cause of action, discussion of this claim would simply repeat the analysis above. Accordingly, the Court grants Defendants' motion and denies Plaintiff's cross-motion for summary judgment on Plaintiff's claim labeled violation of § 1983.

--------

[11] Plaintiff does not respond to Defendants' argument in support of summary judgment on this claim.

**F.      Injunction**

Defendants argue only that the Court should deny Plaintiff's request for injunctive relief because there is no merit to the causes of action upon which injunctive relief might be based. Since the Court has found that genuine issues of material fact exist on Plaintiff's First Amendment retaliation claim, it cannot yet determine whether an injunction is warranted in this case.  However, the Court notes that Plaintiff's request for an injunction would be better phrased as a requested form of relief rather than an independent cause of action.


**IV. CONCLUSION**

Accordingly, having reviewed the parties' submissions and heard their arguments in support of, and in opposition to, the current motions, and for the reasons stated herein, as well as at oral argument, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** and Plaintiff's cross-motion for summary judgment is **DENIED** on Plaintiff's claims against Defendant Clarke in her official capacity; and the Court further

**ORDERS** that Defendants' motion and Plaintiff's cross-motion for summary judgment are **DENIED** on Plaintiff's First Amendment retaliation claim, New York constitutional free speech claim, and injunction request; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** and Plaintiff's cross-motion for summary judgment is **DENIED** on Plaintiff's claim labeled violation of § 1983 and Plaintiff's procedural and substantive due process claims; and the Court further

**ORDERS** that Plaintiff's counsel is to initiate a telephone conference with the Court and

Defendants' counsel using a professional conferencing service on March 22, 2007 at 11:00a.m.

to set a trial date for this action.

**IT IS SO ORDERED.**

Dated: March 14, 2007                                     _____
        Syracuse, New York                      Frederick J. Scullin, Jr.
                                                Senior United States District Court Judge